UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Redeemed Christian Church of God Strong Tower Parish,   Case No. 17-cv-1379 (WMW/FLN)

      Plaintiff,                            **ORDER**

      v.

Auto-Owners Insurance Company,

      Defendant.

_____

Christina Phillips, for Plaintiff.
Brock Alton, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Plaintiff's motion to amend the complaint and state a statutory claim (ECF No. 31). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

**A.    Background**

Plaintiff Redeemed Christian Church of God Strong Tower Parish operates a church sanctuary, built in 1894, located at 697 13th Avenue Northeast Minneapolis, Minnesota. ECF No. 39, Ex. A. Defendant Auto-Owners Insurance Company is a Michigan headquartered insurance company. ECF No. 1. On April 26, 2017, Plaintiff commenced this diversity action pursuant to 28 U.S.C. § 1332, raising a breach of contract claim. *Id.* In the instant motion, Plaintiff seeks the court's leave to amend its Complaint to claim recovery of taxable costs and attorney's fees under Minn. Stat. § 604.18.

On May 3, 2015, large hail and wind gusts damaged the roof and other portions of the exterior of Plaintiff's church sanctuary. *See* ECF No. 1. At the time of the hail storm, Plaintiff was insured under a property insurance policy issued by Defendant ("the policy") with a policy term of

September 25, 2014, through September 25, 2015. ECF No. 39, Ex. 1. Generally, the policy provided commercial property coverage and commercial generally liability coverage. *Id.* Under the policy's "Coverage" provision, Defendant is obligated to "pay for direct physical loss of or damage to Covered Property at the premises." *Id.* at 10. Under the policy's "Exclusion" provision, Defendant "will not pay for loss or damage caused directly or indirectly by . . . [w]ear and tear; . . . [r]ust, corrosion, decay, deterioration, hidden or latent defect or any quality in [the] property that causes it to damage or destroy itself." *Id.* at 24.

On June 18, 2015, Plaintiff submitted a policy claim to Defendant to cover the damage related to the hail storm. ECF No. 39, Ex. 2. At the April 30, 2018, hearing, Defendant represented that it used an independent insurance adjuster, Cunningham Lindsey, to initially investigate Plaintiff's claim, and at Cunningham Lindsey's suggestion, Defendant retained Haag Engineering ("Haag") to inspect Plaintiff's storm related damage. On August 11, 2015, Haag inspected Plaintiff's storm damage, and on September 11, 2015, provided a written report of its findings. ECF No. 34, Ex. 3.

Haag reported that:

1. Shingles had been displaced from the roof by wind forces. There was approximately 70 square feet on the north slopes, about 105 square feet on the east slope, and approximately 25 square feet on the south and west slopes of missing and torn shingles that were consistent with the effects of wind on the Redeemed Christian Church roof.

2. The age and deterioration of the shingles, extent and pattern of missing and torn shingles, and previous repairs indicates that it is highly likely that displacement and tearing of shingles occurred from more than one wind event and was exacerbated by improper installation.

3. There were approximately 6 hail-damaged shingles per square on the north slopes, and over 40 hail-damaged shingles per square on the west slopes on the Redeemed Christian Church roof.

2

4. We cannot rule out wind or hail as a cause for a water leak in the roof at the northeast building corner. We observed no hail- or wind-caused damage to the low-sloped roof, including the area of reported leakage; however, there were opened seams that created non-watertight conditions[.]

5. The water leak at the southwest building corner occurred below the HVAC RTU with ponding water. There was no wind- or hail-caused damage to the low-sloped roof.

6. Dents on the steel coping and valley flashing related to hailfall were a *cosmetic* condition that would not functionally alter the material or the functionality of the components.

*Id.* (emphasis added).

At the April 30, 2018, hearing, Defendant represented that based on Lindsey Cunningham's review of Haag's report, and its internal discussions with Lindsey Cunningham, it initially offered Plaintiff $34,469.26 actual cash value ("ACV") to cover the hail storm related damage. Defendant's initial $34,469.26 ACV offer, issued on October 26, 2015, was accompanied by a non-waiver agreement, which provided that by accepting the $34,469.26 ACV payment, Plaintiff would not be waiving future rights to receive additional payments under the policy. ECF No. 39, Ex. 3. On December 21, 2015, Lindsey Cunningham notified Defendant that Plaintiff's general contractor estimated that the church sanctuary's initial damages exceeded $130,000. ECF No. 34, Ex. 9. Based on the "discrepancy between [Haag and Lindsey Cunningham's] estimate and the first estimate obtained [by Plaintiff,]" Lindsey Cunningham recommended that Defendant obtain an "estimate from a contractor as well." *Id.*

At the April 30, 2018, hearing, the parties agreed that after additional investigation and inspection, further structural damage of the church sanctuary was discovered. Defendant claims that it has now paid Plaintiff roughly $300,000 on the policy related to the May 3, 2015, hail storm. The

parties also agreed at the April 30, 2018, hearing, that they are in substantial disagreement as to Defendant's remaining contractual obligations under the policy, as Plaintiff seeks over $1.5 million in compensation. *See also* ECF No. 34, Ex. 14.

This case stems from Plaintiff's allegation that Defendant has not paid it the "entire amounts due under the Policy for losses and damages caused by the covered hail and wind event." ECF No. 1 at 2. Plaintiff now moves for the court's leave to amend its Complaint to raise a bad faith statutory claim for taxable costs and attorney's fees pursuant to Minn. Stat. § 604.18. ECF No. 31. Plaintiff alleges that "it substantially performed all conditions required by the insurance policy to be performed by it, including, but not limited to, giving notice of the loss to [Defendant], exhibiting the insured premises to [Defendant], and otherwise cooperating with [Defendant's] investigation of the loss and claim." ECF No. 1 at 2. Plaintiff avers that based on Haag's "incomplete investigation, [Defendant] refused to pay for hail damage to metal roofing components because Haag deemed it to be cosmetic in nature, even though the the (sic) Policy neither limits nor excludes cosmetic damage." ECF No. 33 at 2. Plaintiff further argues that Defendant "unreasonably delayed in making payment . . . for damage it acknowledged was covered under the Policy . . . [and] failed to pay . . . for . . . the loss and damage . . . covered . . . ." *Id*. "In that regard, [Defendant] relied upon [Haag's investigation,] which it . . . should have known, was unreasonable, in that it failed to address all of the damage . . . ." *Id*. Defendant counters that "any delay in claim settlement . . . resulted . . .[from Plaintiff], via its representatives, to timely submit this claim, to respond to [its] requests, to justify claim amounts, and even to provide [Defendant] an estimate for repairing alleged damage to steel roofing components . . . until well after this litigation was commenced." ECF No. 37 at 2.

**B.    Legal Standard**

The parties focus their analysis here on Plaintiff's right to raise a claim under Minnesota's bad faith statute, Minn. Stat. § 604.18. This statute, known as the Minnesota First Party Good Faith Law, allows individual holders of insurance policies to bring claims against insurance providers for penalties and fees associated with certain insurance claims practices, such as the bad faith denial of benefits. *See* Minn. Stat. § 604.18. The statute permits recovery, as a penalty, of taxable costs of up to $250,000 and attorney's fees of up to $100,000, if the insured can show: (1) the absence of a reasonable basis for denying the insurance policy benefits; and (2) "that the insurer knew of the lack of a reasonable basis for denying the benefits of the insurance policy or acted in reckless disregard of the lack of a reasonable basis to do so." *Friedberg v. Chubb and Son, Inc.*, 800 F. Supp. 2d 1020, 1025 (D. Minn. 2011). "The first prong is an objective standard that asks whether a reasonable insurer would have denied or delayed payment of the claim under the facts and circumstances. Under this prong, courts consider whether the claim was properly investigated and whether the [investigation results] were [reasonably evaluated and reviewed]." *Id.* (internal citation omitted). "The second prong is subjective and turns on what the insurer knew and when. Knowledge of the lack of a reasonable basis may be inferred and imputed to an insurer where there is reckless indifference to facts or proofs submitted by the insured." *Id.* (internal citation omitted).

Similar to Minnesota law on punitive damages claims, Minnesota's bad faith statute does not permit a plaintiff to raise a bad faith claim in their initial complaint. *See* Minn. Stat. § 549.191 (punitive damages); *see also* Minn. Stat. §604.18 subd. 4(a). Rather, a plaintiff is first required to seek the court's leave to amend the pleadings to raise the bad faith claim. *See* Minn. Stat. § 604.18 subd. 4(a). A motion to amend a complaint brought under the Minnesota bad faith statute "must allege the applicable legal basis . . . for awarding taxable costs . . . and must be accompanied by one

or more affidavits showing the factual basis for the motion." *Id.* "[I]f the court finds prima facie evidence in support of the motion [to amend], the court may grant the moving party permission to amend the pleadings to claim taxable costs under this section." *Id.*

Federal Rule of Civil Procedure 15 governs the amendment of pleadings in federal actions. The Rule provides that a party may amend its pleading once as a matter of course within 21 days of service, otherwise only with either the opposing party's written consent or with the court's leave. *See* Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). There is no absolute right to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650–51 (8th Cir. 1996). However, only limited circumstances justify a district court's refusal to grant leave to amend pleadings, such as "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

Under this framework, "[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended [pleading] could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738. To avoid dismissal under Rule 12(b)(6), a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must

6

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Because the Court is exercising diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332, the Court applies Minnesota substantive law and federal procedure, under what has become known as the *Erie* doctrine. *See Prudential Ins. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any [diversity] case is the law of the State."); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). However, the process by which a federal district court applies state substantive law and federal procedure is confounded when a state statute, ostensibly substantive law, primarily regulates procedure. To that end, both Congress, under the Rules Enabling Act, 28 U.S.C. § 2072, and the United States Supreme Court, through the *Erie* doctrine, have attempted to delineate a workable standard by which a federal district court determines whether to apply a federal procedure or a conflicting state law to resolve the question of what procedure governs in a diversity case. In *Hanna v. Plumer*, 380 U.S. 460, 474 (1965), the United States Supreme Court, applying the *Erie* doctrine, held that Federal Rule of Civil Procedure 4(d)(1), relating to service of process, "is valid and controls," even if it conflicts with a comparable Massachusetts statute governing service of process that would result in an entirely

different outcome if followed. More recently, in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, 559 U.S. 393, 398, 417–18 (2010), the United States Supreme Court provided further *Erie* doctrine guidance, concluding that a court "must first determine whether [a federal rule of procedure] answers the question in dispute[,]" and pursuant to the Rules Enabling Act, whether the application of federal procedure would "abridge, enlarge or modify any substantive right." If a federal rule of procedure really regulates procedure– that is regulates only the "manner and means by which the litigants rights are enforced" and "answers the question in dispute[,]" it "governs . . . notwithstanding [the state law]—unless [the federal rule of procedure] exceeds statutory authorization or Congress's rulemaking power." 559 U.S. at 398, 407 (internal citations omitted). A court need not "wade into Erie's murky waters unless the federal rule [of procedure] is inapplicable or invalid." *Id.*

**C.    Analysis**

The *Erie* doctrine tension here, is whether Minn. Stat. § 604.18 or Federal Rule of Civil Procedure 15 controls Plaintiff's motion to amend its Complaint to raise a bad faith claim under Minnesota law. If Minn. Stat. § 604.18 controls, Plaintiff is required to first make a *prima facie* showing of entitlement to taxable costs and attorney's fees, i.e., that there was an absence of a reasonable basis for denying its claim for policy benefits; and that Defendant "knew of the lack of a reasonable basis or acted in reckless disregard of the lack of a reasonable basis." *Friedberg*, 800 F. Supp. 2d at 1025. Conversely, if Federal Rule of Civil Procedure 15 controls, Plaintiff need only satisfy the federal pleading standard of whether there was "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

amendment[.]" *See Foman*, 371 U.S. at 182.

Applying the *Erie* doctrine as clarified in *Shady Grove* here, the Court concludes that Federal Rule of Civil Procedure 15 supplies the procedural rule governing the instant motion.[1] First, Minn. Stat. § 604.18 and Federal Rule of Civil Procedure 15 plainly conflict. Specifically, Minn. Stat. § 604.18 requires a *prima facie* evidentiary showing supported by one or more affidavits. Federal Rule of Civil Procedure 15 has no such preliminary evidentiary hurdle, and textually requires that amendment be "freely" given when "justice so requires." In addition, Minn. Stat. § 604.18, like Minn. Stat. § 549.191, the statute for pleading punitive damages, functions as a gatekeeping statute, prohibiting a plaintiff from seeking taxable costs and attorney's fees in their initial complaint. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832, at *5 (D. Minn. July 27, 2017). In this regard, Minn. Stat. § 604.18 imposes a preliminary evidentiary showing and surplus process not contemplated by Federal Rule of Civil Procedure 15.

Next, Federal Rule of Civil Procedure 15 answers the question in dispute, whether Plaintiff may properly amend their Complaint, and is "sufficiently broad to control the issue before the court." *Shady Grove*, 559 U.S. at 421. Moreover, that Federal Rule of Civil Procedure 15, both "really regulates procedure" and does not "abridge, enlarge or modify any substantive right," demonstrates its validity under the Rules Enabling Act. *Id.* at 410, 417–18. Indeed, as to whether Federal Rule of Civil Procedure 15 abridges, enlarges, or modifies Plaintiff's substantiative rights,

---

1       Applying *Shady Grove*, Magistrate Judge Steven Rau recently reached the same conclusion, that Federal Rule of Civil Procedure 15, rather than Minn. Stat. § 604.18, supplies the procedure by which a complaint may be amended to raise a bad faith claim under Minnesota law in a diversity action. *See Selective Ins. Co. of S.C. v. Amit Sela*, Civil No. 16-cv-4077, (PJS/SER) (D. Minn. April 26, 2018).

the Court notes that Plaintiff must still prove their entitlement to taxable costs and attorney's fees, notwithstanding "the application of Rule 15 in deciding their motion to amend." *In re Bair Hugger*, 2017 WL 5187832, at *9. Put differently, that the Court concludes that Plaintiff may raise a bad faith claim authorized by the Minnesota bad faith statute does not mean that its remedy under the same Minnesota statute has been *per se* enlarged or modified; Plaintiff's available relief under Minn. Stat. § 604.18 is statutorily capped at $250,000 in taxable costs and $100,000 in attorney's fees. Furthermore, the Court is mindful that the United States Supreme Court has "rejected every statutory challenge to a Federal Rule" under the Rules Enabling Act, and the Court finds no proscription on applying Federal Rule of Civil Procedure 15 here. *Id.* at 407–08 (citing and discussing cases).

Applying Federal Rule of Civil Procedure 15 to the instant motion, there is nothing establishing that Plaintiff's proposed Amended Complaint was motivated by "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment . . . ." *Foman*, 371 U.S. at 182. As to futility, applying the required Federal Rule of Civil Procedure 12(b)(6) analysis and accepting the proposed Amended Complaint as true and granting all inferences in Plaintiff's favor, the pleading plausibly establishes that, first, Defendant has not paid out on all the damage or loss covered under the policy, and that there was no reasonable basis not to do so. This is particularly plausible in light of Plaintiff's allegation that Defendant failed to reasonably evaluate Haag's report, *see Friedberg*, 800 F. Supp. 2d at 1025, and the parties marked and repeated disputes with respect to claim submission and processing under the policy. Whether it be the initial dispute and disparity over Defendant's $34,469.26 ACV offer and Plaintiff's $130,000 estimate, or the current impasse regarding Defendant's $300,000 in payments in contrast to Plaintiff's $1.5

million demand, Plaintiff has raised a plausible claim under prong one. *See, e.g., Davis v. Grinnel Mut. Reinsurance Co.*, No. 09-cv-2563 (JMR/FLN) (reasoning that "the $187,961.29 discrepancy between the Defendant's offer of benefits and the estimate provided by Plaintiff's public adjuster . . . support[s] . . . the Plaintiff's argument that Defendant lacked a reasonable basis for denying full benefits under the policy.") (D. Minn. April 2, 2010).

In addition, as to prong two, Plaintiff's assertion that Haag included references to cosmetic damage in its report, which it claims Defendant should have known was not encompassed by the policy, raises an inference and imputation that Defendant recklessly disregarded the known facts, circumstances, and the policy terms in denying Plaintiff's claim, or at least substantially delayed claim resolution. *See Friedberg*, 800 F. Supp. 2d at 1025. In other words—assuming Plaintiff's allegations to be true—the proposed Amended Complaint contains sufficient factual content to state a facially plausible claim that Plaintiff followed the policy terms in submitting its claim, and that conversely, Defendant knew that it contravened the policy by incorporating Haag's report into its initial ACV. *See Iqbal*, 556 U.S. At 678; *see also Friedberg*, 800 F. Supp. 2d at 1025. As such, Plaintiff's proposed Amended Complaint is not futile, and it is permitted to raise a bad faith claim under Minn. Stat. § 604.18.

## D.    Order

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion to amend the complaint and state a statutory claim (ECF No. 31) is **GRANTED**. Plaintiff is given leave of Court to file its proposed Amended Complaint, docketed at ECF No. 34-1.


DATED: May 8, 2018                           *s/Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge